UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

CIVIL ACTION NO. 13-169-DLB

TIFFANY WARFORD                                                                           PLAINTIFF

VS.                    **MEMORANDUM OPINION AND ORDER**

CAROLYN COLVIN, Commissioner of
the Social Security Administration                               DEFENDANT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**I.**     **INTRODUCTION**

This matter is before the Court on Plaintiff's and Defendant's cross motions for summary judgment. Because the Commissioner's decision is supported by substantial evidence and was made according to proper legal standards, Plaintiff's motion (Doc. # 9) shall be **denied**, and Defendant's motion (Doc. # 10), shall be **granted**.

**II.**     **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Tiffany Warford is a Kentucky resident who has allegedly suffered from disabling psychological problems since November 1999. (Doc. # 7-1 at 16). Her initial application for supplemental security income was denied on November 10, 2010, and her later request for reconsideration was denied on February 22, 2011. (*Id.*) Plaintiff then requested a hearing, which was held on January 19, 2012, before Administrative Law Judge (ALJ) Brian LeCours. (*Id.*) ALJ LeCours held a further hearing via teleconference on March 14, 2012, to consider new evidence. (*Id.*)

1

In his written opinion, ALJ LeCours weighed the importance of various pieces of evidence, including Plaintiff's testimony and the medical evaluations of multiple doctors. The ALJ found that Plaintiff's claims regarding the severity of her symptoms were suspect because of Plaintiff's treatment and work histories. (Doc. # 7-1 at 23). ALJ Lecours also considered the medical opinions of Drs. Genthner and Ford, neither of whom had established a treatment relationship with the Plaintiff. Because each doctor's conclusions conflicted with Plaintiff's work history, the ALJ afforded little weight to their opinions regarding Plaintiff's work limitations. (*Id.* at 25). On the basis of this evidence and the testimony of two vocational experts, the ALJ concluded that although Plaintiff did have some work limitations, Plaintiff could perform enough jobs in the national economy to preclude an award of disability under the Social Security Act. (*Id.* at 26-27).

Plaintiff then brought an appeal under Section 205 of the Social Security Act. (Doc. #1). That appeal culminated in cross-motions for summary judgment, (Docs. #9, 10), which are now ripe for review.

### III. STANDARD OF REVIEW

The Court's review is limited to determining whether the Commissioner's decision followed proper legal standards and whether the Commissioner's findings are supported by substantial evidence . *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Under this deferential standard, courts will not substitute their judgment for that of the ALJ. *Id.* The Court does not resolve evidentiary conflicts or decide questions of credibility. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Interpretations of statutes and agency regulations are questions of law, which the Court will review de novo. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007).

IV.     ANALYSIS

A.      The five-step process and the residual functional capacity

In deciding whether to award disability benefits, the ALJ must proceed through a five-step analysis. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). At step one, the ALJ determines whether the applicant is gainfully employed. 20 C.F.R. § 404.1520(b). At step two, the issue is whether the applicant suffers from any serious physical or mental impairments. *Id.* at § 1520©. Assuming the answer is yes, the ALJ then considers whether the applicant's impairments are among those listed in Social Security regulations, such that the applicant is presumed disabled. *Id.* at § 1520(d).

Neither party disputes the ALJ's fact finding with regards to the first three steps: Plaintiff is not currently employed and does suffer from some significant impairments, but none of these impairments are among those listed in agency regulations. The ALJ found as much in his written opinion. (Doc. # 7-1 at 21).

If a claimant's impairments fail to qualify as a listed impairment under agency regulations, the ALJ must then prepare a residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). This RFC is used at both steps four and five of the decision making process. *Id.* at § 1520(a)(4). At step four, the ALJ decides, in light of the RFC, whether the claimant can perform any past relevant work. *Id.* at § 1520(a)(4)(iv). If so, then the claimant is not eligible for benefits. *Id.* If not, the ALJ then considers alternative work the claimant could do, and evaluates whether enough of that work exists in the national economy to preclude an award of disability benefits. *Id.* at § 1520(a)(4)(v). This determination is based in part on the RFC, which guides the ALJ regarding the type of work the claimant might be able to perform. *Id.*

Though Plaintiff's briefing on this issue is unclear, it appears that her primary dispute is with the ALJ's findings regarding the RFC. There is no indication that Plaintiff contests the ALJ's determinations at steps four and five. Rather, Plaintiff views the ALJ's findings as based on a legally inadequate RFC assessment. Specifically, Plaintiff argues that the ALJ's reliance on the opinions of a non-examining physician violates agency regulations. (Doc. #9-1, at 5). Instead, Plaintiff asserts, the ALJ should have afforded more weight to the two doctors who actually examined the Plaintiff. (*Id.* at 5-7).

### B. The ALJ properly weighed the evidence

The Court recognizes that substantial evidence is an amorphous term, but past Sixth Circuit opinions offer ample guidance about its application in Social Security cases. In *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007), the Sixth Circuit found that the ALJ's opinion was not supported by substantial evidence because the ALJ ignored accepted medical practice in making its determination. The ALJ gave greater weight to the claimant's non-treating doctor, despite the fact that the claimant's treating doctors had followed standard medical procedures in making their diagnoses. Further, and most importantly, the ALJ failed to properly analyze the opinions of the treating physicians or explain why those opinions were rejected. *Id.* at 245. By contrast, in *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997), the Sixth Circuit found that substantial evidence *did* support the ALJ's findings. While the ALJ's findings did partially conflict with a treating physician's conclusions, the ALJ documented the ways in which the record evidence conflicted with those conclusions. *Id.* at 530. Moreover, the ALJ noted that the treating physician's own diagnostic reports didn't fully support the doctor's ultimate conclusions. On this basis, the ALJ decided to not completely adopt the opinions of a

treating physician, and the appeals court agreed. *Id.*

What can be gleaned from these cases is that satisfaction of the substantial evidence standard requires the following: that the ALJ consider the medical evidence in its entirety; that the ALJ explain why the evidence supports a particular conclusion; and that the ALJ have good reasons for rejecting the opinions of a treating medical source. On all of these issues, ALJ LeCours did what the law required of him. And though Plaintiff might wish the ALJ had analyzed the evidence differently, she has not convinced the Court that the ALJ committed legal error.

The ALJ was under no obligation to accept wholesale the opinions of Drs. Ford and Genthner. Under agency regulations, medical opinion evidence generally fits into three categories: treating physicians are the first category, and their opinions are presumptively entitled to the most weight; non-treating physicians who have examined the claimant fall into a middle category–their opinions are typically afforded less weight than treating physicians, but more weight than the opinions of those who have never seen the claimant; opinions of non-treating sources who have never examined the claimant typically enjoy the least weight. 20 C.F.R. 416.927(c)(1). Yet these regulations are not rules etched in stone. While it is true that the opinions of examining physicians will generally be given more weight than non-examining sources, see 20 C.F.R. 416.927(c)(1), examining physicians are but one piece of evidence in an entire record. In fact, at least one federal appeals court has held that an ALJ need not have clear and convincing evidence for rejecting the opinions of an examining (but non-treating) physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

The two physicians Plaintiff relies upon had barely established a relationship with the Plaintiff. Dr. Genthner gave a consultative examination only after Plaintiff applied for disability benefits. (Doc. # 7-1 at 314). Dr. Ford examined the Plaintiff only after a reference from Plaintiff's counsel. (*Id.* at 382). Neither of these doctors had the type of relationship with Plaintiff that would justify the deference Plaintiff demands.

Admittedly, the ALJ's evaluation of Dr. Genthner's opinion leaves much to be desired. He states, for instance, that Dr. Genthner's "'moderate'" opinion appears to be unsupported by the evidence of record and unsupported by his mental status examination finding." (*Id.* at 25). The Court is unsure what this is supposed to mean. Dr. Genthner made three findings regarding Plaintiff's limitations that might be classified as "moderate"–that Plaintiff was moderately limited in understanding complex instructions; that Plaintiff was mild to moderately limited in relating to coworkers; and that Plaintiff was moderately limited in tolerating stress. (*Id.* at 320-21). The ALJ does not indicate which one of the three he's rejecting. His justifications for rejecting that opinion are also inadequate: stating that something is "unsupported by the evidence of record" is conclusory. Were Dr. Genthner a treating physician, the ALJ would need to explain how the doctor's conclusions were inconsistent with the evidence of record. As it is, however, the Plaintiff is not entitled to reasons for rejecting the opinion of an examining (but non-treating) source. *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012). Thus, the ALJ's failure on this front is not fatal.

Despite the above weaknesses, the ALJ's findings regarding Plaintiff's work limitations are supported by substantial evidence. The ALJ determined that Plaintiff could perform a full range of work with the following restrictions:

6

> [W]ork must consist of simple, routine tasks with short, simple instructions, with only simple work-related decisions with few workplace changes; there can be no interaction with the general public; only occasional interaction with co-workers; only occasional interaction with supervisors; with inability to work in close proximity to others; there can be no requirement to read instructions or to write reports; and there can be no requirement to perform math calculations.

The ALJ came to this conclusion after considering Plaintiff's testimony, Plaintiff's work and treatment history, and the medical opinions of multiple professionals. The ALJ found evidence that Plaintiff's claims of debilitating depression were overstated. The Plaintiff claimed, for instance, that her disability began in 1999, but the Plaintiff had sought treatment very infrequently and had even rejected treatment in 2005. (Doc. # 7-1 at 23).

Though Plaintiff takes issue both with the lack of weight afforded to the opinions of Drs. Genthner and Ford and the weight afforded to the opinions of Dr. Tessnear, Plaintiff does not indicate what, precisely, she finds so offensive about the RFC. She apparently wishes that the ALJ had simply translated Drs. Ford's and Genthner's opinions into an RFC, disregarding the other evidence of record. But even if the ALJ had done so, Plaintiff's brief fails to show (or even attempt to show) that a Drs. Ford and Genthner-endorsed RFC would differ substantially from the one adopted by the ALJ. In other words, Plaintiff takes great pains to show that the ALJ should have deferred to Plaintiff's preferred doctors while offering not a scintilla of evidence that those doctors' opinions would lead to a different result.

Take, for instance, Dr. Genthner's non-exertional limitation recommendations. He opined that Plaintiff's ability to retain and follow simple instructions was below average, (Doc. #7-1, at 320); Dr. Tessnear advised that Plaintiff's limitations were more severe. (*Id.* at 392). Dr. Genthner opined that Plaintiff's ability to understand and retain complex

7

instructions was moderately limited, (*Id.* at 320); Dr. Tessnear agreed. (*Id.* at 392). Dr. Genthner opined that Plaintiff's capacity to follow complex instructions was moderately limited, (*Id.* at 320); Dr. Tessnear advised that Plaintiff's limitations on this front were marked–a more restrictive evaluation. (*Id.* at 392). On most issues, Dr. Genthner's evaluation matched that of Dr. Tessnear. And where Dr. Genthner disagrees, he takes the position that Plaintiff suffers from *fewer* work limitations. Plaintiff's position on Dr. Genthner is thus exceedingly odd. The Court cannot comprehend why Plaintiff is so frustrated with the ALJ's reliance on Dr. Tessnear, a person whose opinions were more favorable to Plaintiff than those of other medical professionals.

Plaintiff is similarly miffed by the ALJ's failure to rely on the opinion of Dr. Ford. Yet, again, Plaintiff's brief does not advise the Court how the RFC adopted by ALJ Lecours fails to comport with Dr. Ford's opinion. Dr. Ford did note that, in her current state, Plaintiff would be unlikely to sustain full-time employment. (Doc. # 7-1, at 385). Yet Dr. Ford is a medical professional, not a vocational or legal expert. And the availability of jobs, given Plaintiff's work limitations, is outside Dr. Ford's expertise.

Further, as the ALJ noted, Dr. Ford's assessment suffered from certain flaws. Much of her report was based largely on the Plaintiff's own testimony. (Doc. # 7-1 at 25). Dr. Ford's findings regarding Plaintiff's work limitations conflicted with the results of Dr. Ford's own mental status examination. (*Id.*) Even if that report was flawless, it contained some evidence that contradicted Plaintiff's claims of disability. For example, Plaintiff's treatment record indicated intermittent bouts of depression that improved with treatment, (*Id.* # 7-1 at 24), a fact Dr. Ford readily conceded by noting that Plaintiff's prognosis largely depended "on her *willingness* to seek psychiatric treatment." (*Id.* # 7-1, at 385) (emphasis added).

Surely Plaintiff cannot expect the Court to award her disability benefits based on a condition that would likely improve with proper medical treatment.

Given these problems, and the testimony of Drs. Tessnear and Genthner, the ALJ's RFC determination was supported by substantial evidence.

Plaintiff seems to think that any evidentiary conflicts must automatically be resolved in her favor. But this is not how the administrative appeal process works. The ALJ is charged with resolving evidentiary conflicts in the record and evaluating the opinions of various medical experts. *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987). And though Plaintiff might not agree with the ALJ's findings, they cannot be overturned so long as substantial evidence supports them, as is the case here.

Finally, Plaintiff notes a couple of minor discrepancies in the ALJ's opinion: first, that Dr. Tessnear's opinion cites an exhibit (34F) which does not exist in the record; and second, that the ALJ incorrectly stated that Plaintiff had obtained a GED. Plaintiff apparently believes these discrepancies show that the ALJ's ruling is riddled with errors. They do not.

As to the first error–Dr. Tessnear referencing Exhibit 34F–this is a minor typographical error. It is plainly obvious to the Court that Tessnear instead meant to reference Exhibit 4F, which is Dr. Genthner's report. Regarding the second issue–whether the ALJ was wrong to conclude that Plaintiff obtained her GED–the Court is unconvinced that this is a serious error, or even an error at all. In her reply brief, Plaintiff cites to four pieces of the record that apparently show that Plaintiff did not obtain a GED. (Doc. #11, at 2). None of these pieces of evidence purport to show what Plaintiff says they show. Pages 18 and 19 of the record reference the ALJ's written opinion; Page 211 appears to

be a form in which Plaintiff indicated that she completed the Tenth Grade; Page 291 is an assessment from Bashor Children's Home in 2005 that indicates the Plaintiff was working towards her GED. None of these pieces of evidence conclusively establish that Plaintiff lacked a GED as of last year. Further, the most recent part of the record that references Plaintiff's GED is the report completed by Dr. Ford. In that report, Dr. Ford noted that, by Plaintiff's own representations, Plaintiff received a GED. (Doc. # 7-1 at 382).[1] More importantly, Plaintiff doesn't tell the Court why this fact matters. Whether Plaintiff received a GED would not affect her eligibility for benefits, and Plaintiff has made no efforts to argue otherwise.

## V.    CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Summary Judgment (Doc. # 9) is hereby **denied**; Defendant's Motion for Summary Judgment (Doc. # 10), is hereby **granted**; and the case shall be **dismissed with prejudice**. A Judgment shall be entered concurrently with this opinion.

This 5th day of March, 2014.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\SocialSecurity\MOOs\Lexington\13-169 SSA granting motion for SJ.wpd

---

[1] The Court finds it odd that Plaintiff contests so vehemently a fact that appears on the first page of Dr. Ford's medical report. Afterall, the Plaintiff maintained throughout her filings that Dr. Ford's evaluation was the best representation of Plaintiff's condition. If Plaintiff is right about her lack of a GED, this is apparently false.